Morris E. Miller, Petitioner *v.* Workmen's Compensation Appeal Board (Warren Hess, Inc. and Commonwealth of Pennsylvania), Respondents.

Argued September 16, 1982, before Judges ROGERS, MacPHAIL and DOYLE, sitting as a panel of three.

*Stephen P. Ellwood,* with him *Lester Krasno,* for petitioner.

*Robert Geller,* with him *Lisa Roth,* and *Frank L. Tamulonis, Jr., Zimmerman, Lieberman & Derenzo,* for respondent, Warren Hess, Inc.

OPINION BY JUDGE ROGERS, November 19, 1982:

Morris E. Miller brings this appeal from an order of the Workmen's Compensation Appeal Board affirming a referee's denial of his claim for benefits under the occupational disease provisions of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. 1 *et seq.* Specifically, the claimant filed a claim petition on April 4, 1978 alleging that he had, on August 25, 1975, become totally disabled as the result of silicosis sustained during his eighteen week tenure as a dragline operator for Warren Hess, Inc. Three hearings were held at which the claimant testified as to the nature of his employment and two physicians related contradictory opinions as to the extent and origin of the claimant's disability. On the basis of the evidence adduced at these hearings Referee Noonan made the following disputed factual findings:

8. That claimant failed to meet his burden of proof, to produce evidence of record to support and substantiate that his condition worsened, subsequent to June 3, 1977.

9. That claimant failed to produce competent evidence of record, to support and substantiate that he was exposed to a silica hazard in his employment with the defendant-employer.

10. That claimant failed to produce competent evidence of record, to support and substantiate he was totally and permanently disabled, due to silicosis, as the result of his employment with the defendant-employer.

We first reject the claimant's contention that findings 9 and 10 set forth above were made in capricious disregard of the evidence. On the matter of the presence of a silica hazard at the site of Warren Hess' dragline operations, the whole of the evidence adduced is the testimony of the claimant as follows:[1]

[After describing the dragline machine which he operated, the claimant responded to questions of his counsel.]

Q: And what was it that you were scooping up?

A: Sand; mostly sand and some gravel.

Q: And as you scooped the sand and gravel up what happened to the sand and gravel?

A: Well, it would dribble off the sides and in front of the bucket.

Q: Would it get into the atmosphere?

A: Yes.

Q: Would you inhale it?

---

[1] In his brief the claimant asserts that additional testimonial support is to be found at another point in the notes of testimony. However, our examination of the page referred to reveals that the claimant's testimony there set forth concerned the atmospheric hazards at the site of a previous employer.

A: Yes.

Q: Were you protected in any way from the sand as it came up on the shovel?

A: No.

Q: Were you out in the open air?

A: Out in the open air. Well, I can't say exactly out in the open air. There was a roof overhead but the entire front of the machine was open.

Q: I see. As the sand got into the air, did you inhale it?

A: Yes.

Q: How many hours a day did you work in this process?

A: Eight.

Q: And how many days a week?

A: Five, sometimes six.

Q: Were you lifting up the sand and gravel for eight hours a day, five or six days a week?

A: Yes.

Section 108(k) of the Act, 77 P.S. §27.1(k) defines the relevant inquiry as to whether the claimant's "occupation [was one] involving direct contact with, handling of, or exposure to . . . dust of silicon dioxide." The claimant's burden of proof related to this issue is not overly demanding. *See e.g. Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board,* 43 Pa. Commonwealth Ct. 454, 402 A.2d 718 (1979) (evidence that rock strata subject to drilling operations contained a high percentage of silica is sufficient to support a finding that the dust thereby resulting contained silica); *Moyer v. Brockway Clay Co.,* 14 Pa. Commonwealth Ct. 610, 324 A.2d 876 (1974) (evidence that clay with which the claimant worked possessed a proportion of free silica of 30% to 40% is sufficient to support a finding that dust from the clay posed a

silica hazard). However, none of the authorities brought to our attention by the claimant or by our research are supportive of what must be the claimant's position—that lay testimony as to the presence of sand dust at the workplace, without more, is such compelling evidence of a silica hazard that it may not be disbelieved, discredited, or discounted by a referee.[2]

On the issue of disability the medical evidence was, as the claimant concedes, conflicting. Dr. Norman M. Wall, M.D., a Board certified internist, testified repeatedly and unequivocally that his examination of the claimant, including chest x-rays and lung function studies, had revealed no disability. The testimony of the claimant's physician was to the contrary but it is not capricious disregard of the evidence for a referee to choose, as he must, between the conflicting views of physicians.

The claimant's principal contention is that finding number 8 reproduced above evinces a misconception on the part of the referee as to the applicable burden of proof and as to the effect of a prior workmen's compensation determination in 1977 that the claimant's employment with Hess had not resulted in disability due to silicosis. We agree with the latter point but decide that the error was harmless. In August, 1975 and in June, 1976, the claimant filed claim petitions alleging that he had, as a result of the dragline operation described above, become totally disabled from silicosis. The date of onset of the disability was alleged to be August 25, 1975. These petitions

---

[2] We agree with the claimant that the language of finding number 9 set forth above is unfortunate to the extent that it suggests the absence in the record of any evidence relevant to the issue of silica hazard. The claimant's testimony is clearly relevant on this score. It is not, however, conclusive.

were the subject of a consolidated hearing and were ultimately dismissed by a referee "for failure of claimant to prove disability due to silicosis and anthraco-silicosis." The claimant did not appeal from this determination.

At the commencement of the first hearing on the matter of the instant claim petition, the employer introduced into evidence, over the objection of the claimant's attorney, the record made at the earlier hearing. The stated objection was that the earlier decision could not be considered to be res judicata on the issue of present disability. The claimant now reasserts this position and contends that it was, therefore, error for the referee to admit the earlier record.

We have repeatedly held that due to the progressive nature of the debilitating effects of an occupational disease, a claimant who has not prevailed in a previous petition seeking total disability is not barred by res judicata from refiling his claim in an attempt to prove disability on a later date. *See e.g. Armco Steel Corp. v. Workmen's Compensation Appeal Board,* 60 Pa. Commonwealth Ct. 195, 431 A.2d 363 (1981); *Caggiano v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 524, 400 A.2d 1382 (1979); *Robachinski v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 89, 380 A.2d 952 (1977). However, in each of these cases the determinative fact establishing the inapplicability of the doctrine of res judicata was that the later claim petition alleged the onset of disability at a later point than had been first alleged. Therefore, we reasoned, the issue before the referee with respect to the second claim petition was not the same issue as had been earlier decided. For example, in *Robachinski* we wrote:

The doctrine of res judicata has developed generally to encompass the effect of one judg-

ment upon a subsequent trial or proceeding. For the doctrine to apply from one proceeding to another, there must be a concurrence of four conditions; (1) identity in the thing sued upon or for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. Stevenson v. Silverman, 417 Pa. 187, 190, 208 A.2d 786, 787-88, *cert. denied,* 382 U.S. 833 (1965); McCarthy v. Township of McCandless, 7 Pa. Commonwealth Ct. 611, 617, 300 A.2d 815, 820 (1973). In this case the second condition has not been met and the Board's order, therefore, must be reversed and the referee's order reinstated.

We held in McCarthy, supra, that, when in both the old and the new proceedings the subject matter and the ultimate issues are the same, there is an identity of causes of action for purposes of res judicata. The state of the claimant's health at a given time is the subject matter of a claim petition alleging disability because of anthracosilicosis with the ultimate issue being whether or not the claimant is disabled within the meaning of the Act at the time alleged in the petition. Here, the claimant's initial petition alleged total disability because of anthracosilicosis on October 13, 1973. His second petition, however, alleged total disability because of anthracosilicosis on August 13, 1975, a date some 22 months later. The subject matter and the ultimate issues of the claim petitions differ, therefore, in the time periods in which disability is alleged, and we believe that this difference renders the doctrine of res judicata inapplicable.

*Id.* at 92-93, 380 A.2d at 953.

In the instant case both the 1975 and 1977 claim petitions allege the onset of the claimant's disability to be August 25, 1975. It would appear, then, that the principle of res judicata barred the relitigation of the issue of whether the claimant became disabled due to silicosis on that date. The referee proceeded to conduct a series of full hearings on the merits and ultimately decided on the basis of the evidence, that the claimant was not disabled by an occupational disease and, as noted, we agree with that decision.

We agree with the claimant that he had no burden to show an increase in his disability after August 25, 1975. Any burden he might have had would be to show occupational disability on August 25, 1975, but this was decided against him in the earlier proceeding which was res judicata and his complaint in this regard is unavailing for that reason. Hence, any error committed by the referee in this respect is no ground for our reversal.

Order affirmed.

### ORDER

AND Now, this 19th day of November, 1982, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.