# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Clark, :
          Petitioner :
           :
           :
          v. :
           :
Keystone Lawn Spray :
(Workers' Compensation :
Appeal Board), : No. 1468 C.D. 2022
          Respondent : Submitted: May 26, 2023


BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE COVEY                              FILED:  September 6, 2023


      Stephen Clark (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) November 9, 2022 order affirming WC Judge (WCJ) Tina Rago's (WCJ Rago) decision that denied Claimant's February 13, 2021 Claim Petition for WC Benefits (2021 Claim Petition), with prejudice, as barred by *res judicata* and collateral estoppel. Essentially, the only issue before this Court is whether the Board properly affirmed WCJ Rago's decision dismissing the 2021 Claim Petition based upon *res judicata* and/or collateral estoppel.[1]  After review, this Court affirms.

      On March 2, 1982, Claimant sustained a work-related injury while employed by Keystone Lawn Spray (Employer).  According to the Board and WCJ

---

[1] Claimant set forth 11 issues in his Statement of the Questions Involved.  *See* Claimant Br. at 6.  However, because the issue as stated by this Court is dispositive, this Court does not reach Claimant's issues.

Rago, the WC Bureau possessed no documentation concerning Claimant's claim, given the claim's age and the time since the prior litigation's conclusion. Therefore, WCJ Rago and the Board ascertained information from this Court's decision in *Clark v. Workmen's Compensation Appeal Board (Keystone Lawn Spray)*, 672 A.2d 348 (Pa. Cmwlth. 1995) (*Clark I*), which affirmed the Board's dismissal of Claimant's February 19, 1993 appeal *nunc pro tunc* from Referee[2] Walter M. Leonard's (Referee Leonard) September 20, 1988 decision (Referee Leonard's Decision) granting Employer's petition requesting Claimant's benefits be suspended as of August 16, 1983 (Suspension Petition), because of the availability of work for Claimant.

> The facts as stated in *Clark I* are as follows:
>
> On March 2, 1982, Claimant was employed as a lawn spray technician for [Employer]. On that date, Claimant was exposed to various chemicals while in the course of his employment, and, as a result, developed a rash and peeling skin [(Work Injury)]. Employer accepted this [Work I]njury as compensable and issued a notice of compensation payable [(NCP)] on April 2, 1982. On June 9, 1983, Claimant filed a claim petition for unpaid medical expenses for the treatment of his rash and stomach disorders associated with his [Work I]njury. Employer denied the allegations contained in the claim petition, and in October of 1983, filed [the Suspension Petition]. On February 22, 1984, Claimant filed a second claim petition in which he alleged further stomach disorders and allergic reactions to chemicals stemming from the March 2, 1982 injury. Subsequently, on August 6, 1987, Claimant

---

[2] Referees are now called [WCJs] under the 1993 amendments to the [WC] Act [], Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701. *See* Act 44, Act of July 2, 1993, P.L. 190. However, since this case was before the [R]eferee prior to the effective date of the amendments, August 31, 1993, we will refer to the [R]eferee as such and not as a [WCJ].

*Clark I*, 672 A.2d at 349 n.1.

amended his claim petition to a review petition in which he challenged the calculation of his average weekly wage.

Hearings were held before Referee . . . Leonard concerning both of Claimant's claim petitions and Employer's suspension petition. Dr. Chetwynd E. Bowling [(Dr. Bowling)] testified on behalf of Claimant and opined that Claimant was physically unable to work because of continued episodes of severe prostration resulting from his overexposure to chemicals on March 2, 1982. In rebuttal, Employer presented the testimony of Dr. Gary Alan Newman [(Dr. Newman)] who stated that Claimant was fully recovered and was able to return to work. Employer also presented evidence that alternate employment was available to Claimant as of August 16, 1983. Referee Leonard accepted the testimony of Dr. Newman and rejected that of Dr. Bowling. Based on this finding, Referee Leonard, in his decision circulated on September 20, 1988, granted Employer's [Suspension P]etition and terminated Claimant's compensation as of August 16, 1983.

Claimant filed a timely appeal of Referee Leonard's [D]ecision on October 15, 1988. However, Claimant's counsel voluntarily withdrew that appeal, and the Board by an order dated May 30, 1990, officially closed the record in this case without reaching the merits [(1990 Board Order)]. On February 19, 1993, over four years after [Referee Leonard's D]ecision, Claimant filed a petition for appeal *nunc pro tunc* and a petition for rehearing with the Board on the basis of alleged fraud by [] Employer. Claimant stated in his appeal to the Board that Employer's witness, Dr. Newman, had lied in giving his testimony. He also alleged that Dr. Newman did not have sufficient training to give competent testimony. Finally, he argued that [Referee Leonard] was biased in favor of Employer and had acted as an advocate for Employer instead of as an impartial fact[-]finder. On March 1, 1994, the Board denied both Claimant's petition for a rehearing and his petition for appeal *nunc pro tunc*.

In denying Claimant's petition for rehearing, the Board found that there was not sufficient cause shown to justify granting a rehearing and that Claimant was merely trying to strengthen evidence which had already been presented

3

> before [Referee Leonard]. Although Employer had made a motion to quash the petition for rehearing on jurisdictional grounds, the Board did not rule on that request and instead chose to deny Claimant's petition for lack of cause shown.
>
> The Board also denied, on jurisdictional grounds, Claimant's appeal *nunc pro tunc*. The Board found that his appeal had been untimely filed under Section 423[(a)] of the [WC] Act, 77 P.S. § 853, and that Claimant's allegations of fraud and other improprieties, which might warrant allowing a late appeal, were unfounded. The Board, therefore, granted Employer's motion to quash Claimant's appeal.

*Clark I*, 672 A.2d at 349-50 (footnotes omitted; italics added). In *Clark I*, this Court rejected Claimant's appellate arguments and affirmed the Board's decision.[3]

On November 3, 2018, approximately 24 years after this Court decided *Clark I*, Claimant appealed, pro se, from Referee Leonard's Decision alleging "fraud on the court" and that his "wages were improperly calculated." Reproduced Record (R.R.) at 36a.[4] On February 7, 2019, the Board denied Claimant's appeal for lack of jurisdiction because Claimant did not file his appeal within 20 days of Referee Leonard's Decision as Section 423 of the WC Act requires, or within 18 months after the Board's 1990 order closed the case, as Section 426 of the Act[5] requires. Claimant appealed to this Court, which affirmed the Board's decision on October 30, 2019. *See Clark v. Workers' Comp. Appeal Bd. (Keystone Lawn Spray)* (Pa. Cmwlth. No. 195 C.D. 2019, filed Oct. 30, 2019).

---

[3] The Pennsylvania Supreme Court denied allowance of appeal.

[4] Pennsylvania Rule of Appellate Procedure 2173 requires a reproduced record to "be numbered . . . in Arabic figures . . . followed in the reproduced record by a small a[.]" Pa.R.A.P. 2173. Claimant did not include the small a in numbering the pages of his Reproduced Record. Nevertheless, this Court's references to specific pages in the Reproduced Record shall be followed by an a.

[5] Added by Section 6 of the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 871.

4

On February 13, 2021, Claimant filed the 2021 Claim Petition, wherein he alleged that he had "[a]cquired Porphyria[6] and associated conditions, [a]ll body parts affected" **on March 2**, **1982**, asserting that a "[b]roken hose caused over[-]exposure to lawn care chemicals while spraying [the] lawn of [a] homeowner. [Employer] accepted [the] injury and issued [an] NCP bringing [C]laimant's employment within the provisions of the [WC] Act." R.R. at 6a. Claimant sought temporary total disability benefits from March 2, 1982 to January 1, 1998, and ongoing partial disability thereafter. Employer denied Claimant's material averments, raised affirmative defenses including that *res judicata* and collateral estoppel barred the 2021 Claim Petition, and requested that the 2021 Claim Petition be dismissed. On December 16, 2021, WCJ Rago denied and dismissed the 2021 Claim Petition with prejudice, concluding that *res judicata* and collateral estoppel barred Claimant's action. Claimant appealed to the Board. On November 9, 2022, the Board affirmed WCJ Rago's decision. Claimant appealed to this Court.[7] On

---

6    Relevant to this litigation, porphyria has been defined by the Mayo Clinic as "a group of disorders that result from a buildup of natural chemicals that produce porphyrin in your body." Mayo Clinic, *Patient Care & Health Information, Diseases & Conditions: Porphyria*, https://www.mayoclinic.org/disease-conditions/pomhyria/symptoms-causes/syc-20356066 (updated 6/3/2020). The Mayo Clinic further indicates that "[t]here are two general categories of porphyria: acute, which mainly affects the nervous system, and cutaneous, which mainly affects the skin. Some types of porphyria have both nervous system symptoms and skin symptoms." *Id*. The Mayo Clinic relates the following symptoms to porphyria disorders: severe abdominal pain, nausea, vomiting, weakness or paralysis, sun sensitivity, "sudden painful skin redness (erythema) and swelling (edema)," and skin blisters, among various other symptoms. *Id*.

R.R. at 56a.

7 "In a [WC] appeal, we are 'limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.'" *Skay v. Borjeson & Maizel LLC (Workers' Comp. Appeal*

5

June 2, 2023, Claimant filed an Application for Oral Argument. Employer filed its answer thereto on June 9, 2023.

Claimant contends that WCJ Rago erroneously applied *res judicata* and/or collateral estoppel when she dismissed the 2021 Claim Petition, and the Board erred by affirming her decision. Employer rejoins that Claimant is attempting to relitigate an established diagnosis underlying findings of disability and full recovery the Referee correctly determined, and, therefore, WCJ Rago properly dismissed the 2021 Claim Petition on the basis of *res judicata* and/or collateral estoppel.

This Court has explained:

> The judicial doctrine of *res judicata* "bars actions on a claim, or any part of a claim, which was the subject of a prior action, or could have been raised in that action." *Appeal of Coatesville Area Sch. Dist.*, . . . 244 A.3d 373, 378 ([Pa.] 2021). For the bar of *res judicata* to apply, both actions must have "an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued." *Id*. at 379 (citations and internal quotation marks omitted). . . .

> Collateral estoppel bars re-litigation of an issue decided in a prior action. [*Id*.] at 379. Collateral estoppel may be applied only if both cases involve the same issue, the prior action was litigated to a final judgment on the merits, the party to be estopped was a party or was in privity with a party to the prior action and had a full and fair opportunity to litigate the issue in the prior action, and "resolution of the issue in the prior proceeding was essential to the judgment." *Id*.

*Pocono Mountain Sch. Dist. v. Kojeszewski (Workers' Comp. Appeal Bd.)*, 280 A.3d 12, 17-18 (Pa. Cmwlth. 2022). Thus, "where particular questions of fact essential to

*Bd.)*, 280 A.3d 19, 21 (Pa. Cmwlth. 2022) (quoting *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007)).

6

the judgment are actually litigated and determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action." *Williams v. Workers' Comp. Appeal Bd. (S. Hills Health Sys.)*, 877 A.2d 531, 535 (Pa. Cmwlth. 2005) (quoting *Patel v. Workmen's Comp. Appeal Bd. (Sauquoit Fibers Co.)*, 488 A.2d 1177, 1179 (Pa. Cmwlth. 1985)). "Application of [*res judicata* or] collateral estoppel in a particular case is a question of law . . . ." *Pa. Bd. of Prob. & Parole v. Pa. Hum. Rels. Comm'n*, 66 A.3d 390, 395 (Pa. Cmwlth. 2013).

This Court addressed a scenario similar to the instant case in *Lowe v. Workmen's Compensation Appeal Board (Pennsylvania Mines Corp.)*, 683 A.2d 1327 (Pa. Cmwlth. 1996). Therein, the claimant sustained a work-related back injury on April 28, 1986, and received total disability benefits until 1990, when the referee granted the employer's termination petition, finding, in relevant part, that "[a]ny and all disability relating to the compensable injury of April 28, 1986[,] ceased and terminated September 7, 1988." *Id*. at 1329. The referee's order stated, *inter alia*, that "[a]ny and all disability beyond September 7, 1988 is unrelated to the compensable injury of April 28, 1986." *Id*. The claimant did not appeal from the referee's decision. On January 22, 1993, the claimant filed a reinstatement petition alleging that his condition had deteriorated and his disability recurred. The claimant introduced expert medical testimony stating that, as a result of the April 28, 1986 work injury, the claimant "suffered from 'nerve root irritation with sciatica with radicular pain and severe L[-5] sprain.'" *Id*. The employer introduced medical testimony that the claimant was completely recovered from the April 28, 1986 work injury. The referee found the claimant's expert's testimony more credible and ordered that the claimant's disability benefits be reinstated. The employer appealed to the Board which concluded that the referee had erred because the original referee

7

had found that any disability had ceased, and revisiting the issue was barred by *res judicata*. The claimant appealed to this Court.

> This Court agreed with the Board, reasoning:
>
> [In *Hebden v. Workmen's Compensation Appeals Board (Bethenergy Mines, Inc.)*, 632 A.2d 1302 (Pa. 1993),] [o]ur Pennsylvania Supreme Court noted that, "[r]*es* [*j*]*udicata* or issue preclusion **prevents an employer from relitigating**, by way of a petition to modify or terminate benefits, the original medical diagnosis underlying a referee's finding of a claimant's disability as of the date of the compensation award." [*Id.*] at 1304 (citations omitted).
>
> The present controversy involves the **mirror image of the issue visited in *Hebden***. We must determine **whether an <u>employee</u> can relitigate the original diagnosis underlying a referee**'s **finding of a claimant**'s **disability as of the date of a prior termination**. While doing so, we are constantly vigilant of the distinction between the terms "injury" and "disability" and that "for purposes of receiving [WC], 'disability' is a term synonymous with loss of earning power[,"] so that, "although a worker may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be 'disabled' under the meaning of the [WC] Act and will be entitled to receive compensation." *Bissland v. Workmen's Comp*[.] *Appeal B*[*d.*] *(Boyertown Auto)*, . . . 638 A.2d 493, 495 ([Pa. Cmwlth.] 1994) (*citing*, *Scobbie v. Workmen's Comp*[.] *Appeal B*[*d.*] *(Greenville Steel Car Co.)*, . . . 545 A.2d 465 ([Pa. Cmwlth.] 1988)).
>
> On February 16, 1990, the original referee granted [the e]mployer's termination petition and **held that any and all disability ceased from the work-related injury**. In doing so, the original referee specifically accepted the medical testimony of Robert M. Yanchus, M.D. (Dr. Yanchus), [e]mployer's witness. Dr. Yanchus opined that "the claimant suffered an acute lumbosacral sprain based on history as a result of the injury of April 28, 1986[,] which exhibited **a *full recovery on examination allowing the claimant to return to his former position*** *as Section*

8

*Foreman in the coal mines **without restrictions**.*"
Referee's decision, Feb[.] 16, 1990, F[inding of Fact] No.
4 at 3 ([italic] emphasis added).

In adjudicating the current reinstatement petition[,] the
referee adopted [the claimant's expert] Dr. [Joseph R.]
Sabo's [(Dr. Sabo)] opinion "in full as a finding of fact for
this decision." Referee's Decision, Nov[.] 24, 1993, F.F.
No. 8, at 9. The **keystone of Dr**. **Sabo's opinion was his
acceptance that** [c]**laimant never recovered from his
initial injury**. In order to find that the evidence presented
warranted a reinstatement, the referee necessarily
**revisited the issue of whether any disability existing
beyond September 7**, **1988**, **was unrelated to the
compensable injury of April 28**, **1986**. Accordingly, **we
must view** [**the c**]**laimant's reinstatement petition as an
attempt to relitigate the merits of the original medical
diagnosis underlying the prior termination**.

*Lowe*, 683 A.2d at 1330-331 (bold and underline emphasis added; footnote omitted).

Accordingly, *Lowe* prohibits an employee, such as Claimant, from "relitigat[ing] the

merits of an original medical diagnosis underlying [a] prior termination." *Id*.

Notwithstanding, Claimant contends that his Porphyria is not merely an

injury, but an occupational disease under Section 108(b), (c) and/or (n) of the WC

Act,[8] and accordingly, the Board erred when it dismissed his 2021 Claim Petition as

---

[8] Section 108(b), (c) of the WC Act was added by Section 1 of the Act of October 17, 1972,
77 P.S. § 27.1(b), (c). Section 108(n) of the WC Act was added by Section 1 of the Act of July 7,
2011, P.L. 251, 77 P.S. § 27.1(n). Section 108 of the WC Act defines *occupational disease* in
relevant part:

(b) Poisoning by phosphorus, its preparations or compounds, in any
occupation involving direct contact with, handling thereof, or
exposure thereto.

(c) Poisoning by methanol, carbon disulfide, carbon monoxide,
hydrocarbon distillates (naphthas and others) or halogenated
hydrocarbons, toluene diisocyanate (T.D.1.) or any preparations
containing these chemicals or any of them, in any occupation
involving direct contact with, handling thereof, or exposure thereto.

. . . .

9

barred by *res judicata* and/or collateral estoppel. In support of his position, Claimant cites this Court's decision in *Robachinski v. Workmen's Compensation Appeal Board*, 380 A.2d 952 (Pa. Cmwlth. 1977).[9]

Initially, regarding the *res judicata* effect on occupational disease claims, this Court has explained:

> **An occupational disease injury defined under Section 108** [**of the WC Act**] **has different elements of proof than does a claim for an injury which is not an occupational disease.** Had [the c]laimant elected to pursue a claim under Section 108(m) [of the WC Act], wherein tuberculosis is a specifically enumerated disease, he would need to show that he was employed in one of several statutorily recognized occupations involving exposure to tuberculosis. Had [the c]laimant brought his claim under Section 108(n) [of the WC Act], he would need to demonstrate: [(]1) his exposure to the disease by reason of employment[;] [(]2) a causal relationship between his disease and his industry or occupation[;] and [(]3) an incidence of that disease substantially greater in his industry or occupation than in that of the general population. No such factual elements would need to be proven in a non-occupational injury under Section 301(a) [of the WC Act, 77 P.S. § 431,] generally. Thus, the

---

(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For the purposes of this clause, partial loss of hearing in one or both ears due to noise; and the diseases silicosis, anthraco[]silicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.

77 P.S. § 27.1(b), (c), (n).

[9] Claimant asserts that the March 2, 1982 chemical exposure work incident caused Porphyria, but such disease was unknown to medical science at the time of his injury. Employer notes that despite Claimant's assertion that "dual porphyria [is] a disease which was newly discovered in 1989[,]" Claimant Br. at 12, "in *Reardon v. Weinberger*, 387 F. Supp. 1210 (E.D. Pa. 1975), a case decided seven (7) years prior to Claimant's [W]ork [I]njury, the [c]ourt discusses a diagnosis of [a]cute intermittent porphyria alleged by a claimant seeking Social Security Disability benefits." Employer Br. at 13 n.7.

ultimate issues under Section 301(a) [of the WC Act] on the one hand and [Section] 108 [of the WC Act] on the other are not the same. We therefore believe that the doctrine of technical *res judicata* is not applicable.

**What is applicable**, **in our view**, **however**, **is the doctrine of collateral estoppel** (or *res judicata* in its broad sense). This doctrine states that where **particular questions of fact essential to the judgment are actually litigated and determined by a final valid judgment**, **the determination is conclusive between the parties in any subsequent action on a different cause of action**.[10]

> Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that[:] (1) are identical; (2) were actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were "material" to the adjudication.

*McCarthy* [*v. Twp. of McCandless*], . . . 300 A.2d [815,] 820-21 [(Pa. Cmwlth. 1973)].

*Patel*, 488 A.2d at 1179 (italics and bold emphasis added).

In *Robachinski*, a mining industry employee filed a WC claim alleging that he had become totally and permanently disabled due to work-related

---

[10] *See, e.g.*, *Christopher v. Council of Plymouth Twp.*, 635 A.2d 749 (Pa. Cmwlth. 1993), wherein this Court explained:

> [T]he doctrine of collateral estoppel . . . provides that the determination of a fact in a prior action is deemed conclusive between the parties in a subsequent action even though the cause of action is different, where the fact was actually litigated in the prior action, was essential to that judgment, and was determined by a valid and final judgment. A [WC] claim and a common law cause of action are not identical and consequently *res judicata* is not applicable. **A [WC] determination that a claimant was no longer disabled can however collaterally estop consideration of the identical issue** in a subsequent civil trial. *Id.*

*Id.* at 752 (citations and footnote omitted; bold and italic emphasis added).

11

anthracosilicosis[11] on **October 13**, **1973**. A referee subsequently disallowed the claim, and the Board affirmed the referee's decision, dismissing the appeal on October 24, 1974. The claimant did not appeal from the Board's action. On August 15, 1975, the claimant filed another claim petition again alleging that he had become totally and permanently disabled due to anthracosilicosis. However, the claimant indicated that **the date his disability began was August 13**, **1975**. The referee found that the claimant had become permanently and totally disabled from anthracosilicosis on August 13, 1975, due to the accumulated effect of all of his exposure to a silica hazard, and awarded compensation. On appeal, the Board reversed the referee's decision, concluding that the prior finding that the claimant was not disabled was *res judicata* and barred any subsequent petition averring disability from the same employment without any additional exposure.

On appeal, this Court reversed, reasoning:

> **The referee's finding that the claimant was not disabled on October 13**, **1973**[,] **was not challenged in the subsequent claim petition which alleged disability <u>on a different date</u>**.
>
> The fact that the claimant did not have additional employment exposure in the period between his first and second claim petitions does not make the referee's subsequent finding of disability unreasonable, for **the progressive nature of occupational diseases has long been recognized** by the courts of the Commonwealth. In *McIntyre v. E. J. Lavino & Co.*, . . . 25 A.2d 163, 164 ([Pa.] 1942), our Supreme Court stated:
>
>> []Occupational diseases are, from a legal standpoint, peculiar in [] that they arise, not from an accident or event happening at a precise moment, but from a day by day

---

[11] Merriam-Webster's Medical Dictionary defines *anthracosilicosis* as "massive fibrosis of the lungs resulting from inhalation of carbon and quartz dusts and marked by shortness of breath." Merriam-Webster.com Medical Dictionary, Merriam-Webster, https://www.merriam-webster.com/medical/anthracosilicosis (last visited September 5, 2023).

> exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself.[]

> In the absence of a referee's prior finding that the claimant did not have the disease at all, the lack of additional employment exposure does not make the referee's subsequent finding of disability unreasonable.

*Robachinski*, 380 A.2d at 954 (bold and underline emphasis added). Here, unlike in *Robachinski*, the 2021 Claim Petition did **not** allege disability **on a different date**. Rather, Claimant declared in the 2021 Claim Petition that the Work Injury occurred on March 2, 1982, the same injury date for which he received WC benefits and from which Referee Leonard found that he had fully recovered.

In *Miller v. Workmen's Compensation Appeal Board (Warren Hess, Inc.)*, 452 A.2d 608 (Pa. Cmwlth. 1982), this Court explained:

> We have repeatedly held that due to the progressive nature of the debilitating effects of an occupational disease, a claimant **who has not prevailed in a previous petition seeking total disability** is not barred by *res judicata* from refiling his claim in an attempt to prove disability on a later date. *See*[,] *e.g.*[,] *Armco Steel Corp. v. Workmen's Comp*[.] *Appeal B*[d.], . . . 431 A.2d 363 ([Pa. Cmwlth.] 1981); *Caggiano v. Workmen's Comp*[.] *Appeal B*[d.], . . . 400 A.2d 1382 ([Pa. Cmwlth.] 1979); *Robachinski* . . . . **However, in each of these cases the determinative fact establishing the inapplicability of the doctrine of *res judicata* was that the later claim petition alleged the onset of disability at a later point than had been first alleged**. **Therefore**, **we reasoned**, **the issue before the referee with respect to the second claim petition was not the same issue as had been earlier decided**. For example, in *Robachinski* we wrote:

> . . . .

13

> We held in *McCarthy*, *supra*, that, when in both the old and the new proceedings the subject matter and the ultimate issues are the same, there is an identity of causes of action for purposes of res judicata. The state of the claimant's health at a given time is the subject matter of a claim petition alleging disability because of anthracosilicosis with the ultimate issue being whether or not the claimant is disabled within the meaning of the [WC] Act at the time alleged in the petition. Here, the claimant's initial petition alleged total disability because of anthracosilicosis on October 13, 1973. His second petition, however, alleged total disability because of anthracosilicosis on August 13, 1975, a date some 22 months later. The subject matter and the ultimate issues of the claim petitions differ, therefore, in the time periods in which disability is alleged, and we believe that this difference renders the doctrine of *res judicata* inapplicable.

> *Id*.[,] . . . 380 A.2d at 953.

> **In the instant case[,] both the 1975 and 1977 claim petitions allege the onset of the claimant's disability to be August 25, 1975. It would appear, then, that the principle of *res judicata* barred the relitigation of the issue of whether the claimant became disabled due to silicosis on that date.**

*Miller*, 452 A.2d at 610-11 (bold, italic, and underline emphasis added); *see also Evans v. Workmen's Comp. Appeal Bd. (The Deitch Co.)*, 550 A.2d 868 (Pa. Cmwlth. 1988).

Here, similar to *Miller*, Claimant alleged in the 2021 Claim Petition that his work-related injury occurred on March 2, 1982, **the same injury date**, **involving the same incident addressed in Referee Leonard's Decision** for which Claimant received benefits, and wherein Referee Leonard found that Claimant had fully recovered. In both Referee Leonard's Decision, and Claimant's 2021 Claim

14

Petition, Claimant's disability began March 2, 1982. The subject matter addressed in Referee Leonard's Decision, and in the instant action, are identical - i.e., "the state of [C]laimant's health [on March 2, 1982,] . . . with the ultimate issue being whether or not [C]laimant is disabled within the meaning of the [WC] Act at the time alleged in the petition." *Robachinski*, 380 A.2d at 953. In Referee Leonard's Decision, he adopted Employer's physician's conclusion that Claimant had **fully** recovered from the March 2, 1982 Work Injury, granted Employer's Suspension Petition and terminated Claimant's WC benefits effective August 16, 1983. Thus, Claimant's Work Injury and his recovery therefrom, were actually litigated before Referee Leonard. *See id.* Claimant's Work Injury and his recovery were *essential* to Referee Leonard's Decision and were *material* to Employer's Suspension Petition adjudication. *See Patel.* Because Claimant again seeks WC benefits for the March 2, 1982 Work Injury from which Claimant was found to have fully recovered, Claimant's 2021 Claim Petition was barred by collateral estoppel, and the Board properly dismissed Claimant's 2021 Claim Petition consistent with *Miller* and *Robachinski*.[12]

---

[12] Claimant also asserts that WCJ Rago denied him due process when she dismissed the 2021 Claim Petition, as barred by *res judicata* and/or collateral estoppel, without reviewing his evidence. "The essential elements of procedural due process are notice and an opportunity to be heard." *Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1068 (Pa. Cmwlth. 2015). On February 24, 2021, Employer served Claimant with its answer to the 2021 Claim Petition which included *res judicata* and collateral estoppel defenses. *See* R.R. at 13a-19a. Claimant appeared at WCJ Rago's August 12, 2021 telephonic hearing, wherein Claimant was afforded the opportunity to respond to the *res judicata* and collateral estoppel issues. *See* R.R. at 70a. WCJ Rago rendered a legal determination on the *res judicata*/collateral estoppel effect of the prior proceedings on the 2021 Claim Petition, *see Pa. Bd. of Prob. & Parole*, for which Claimant's substantive evidence was not relevant. Thus, Claimant's due process claim is meritless.

15

For all of the above reasons, the Board's order is affirmed.[13]

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[13] Given this Court's disposition of Claimant's appeal, Claimant's Application for Oral Argument is denied.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Clark,                          :
                    Petitioner          :
                                        :
          v.                            :
                                        :
Keystone Lawn Spray                     :
(Workers' Compensation                  :
Appeal Board),                          :     No. 1468 C.D. 2022
                    Respondent          :

## O R D E R

AND NOW, this 6th day of September, 2023, the Workers' Compensation Appeal Board's November 9, 2022 order is AFFIRMED. Stephen Clark's Application for Oral Argument is DENIED.

_____
ANNE E. COVEY, Judge